United States District Court
Southern District of Texas
**ENTERED**
May 02, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| KACEY NICOLE WAGNER, | § |
| | § |
| Plaintiff. | § |
| | § |
| V. | § CIVIL ACTION NO. 3:22-cv-00257 |
| | § |
| NEWREZ, LLC, *et al.*, | § |
| | § |
| Defendants. | § |

## MEMORANDUM AND RECOMMENDATION

Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") has filed a Motion to Enforce Settlement and to Dismiss with Prejudice ("Motion to Enforce Settlement Agreement"). Dkt. 13. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be **GRANTED**.[1]

## BACKGROUND

This case concerns a piece of real property located at 21 Edgewater Street, Bayou Vista, Texas 77653 (the "Property"). On July 5, 2022, Plaintiff Kacey Nicole Wagner ("Wagner") filed suit against Shellpoint in state district court in Galveston County, seeking to recover monetary damages and enjoin a foreclosure sale scheduled to take place the same day. The state court judge handling the matter refused to grant a temporary restraining order enjoining the foreclosure sale. As a result, the foreclosure sale went ahead as planned and the Property was sold to a third party.

On July 20, 2022, Shellpoint removed this case to federal court based on diversity jurisdiction. Wagner's lawsuit advances causes of action for negligence, violation of Texas Property Code § 51.002, and breach of contract.

---

[1] Because a ruling on the Motion to Enforce Settlement Agreement is dispositive of the claims asserted in this matter, I am issuing a Memorandum and Recommendation as opposed to an Order and Opinion. *See Coleman v. City of Opelousas*, No. 6:20-CV-01469, 2021 WL 3812483, at *1 (W.D. La. July 23, 2021) (holding that a motion to enforce a settlement agreement is dispositive and, therefore, properly "presented as a report and recommendation in accordance with the provisions of 28 U.S.C. § 636").

On February 10, 2023, Wagner's counsel and Shellpoint's counsel talked about a possible resolution of this case. During that phone call, Shellpoint's counsel agreed to confer with Shellpoint and then circulate a proposed settlement agreement.

Six days later, on February 16, 2023, Shellpoint's counsel sent Wagner's counsel a proposed settlement agreement. The eight-page document set forth the essential terms of a settlement. These included: (1) Wagner releasing all claims against Shellpoint; (2) Shellpoint coordinating to have $97,425.17 in excess proceeds from the foreclosure sale paid to Wagner; (3) Shellpoint's payment of an additional $250 to Wagner; and (4) the dismissal of this case with prejudice. The proposed settlement agreement specified that the settlement funds would be sent to her counsel's address.

On February 21, 2023, Wagner's counsel sent Shellpoint's counsel an email indicating that the terms outlined in the proposed settlement agreement were acceptable with one exception. "My client would like all funds sent directly to her," Wagner's counsel wrote. Dkt. 13-4 at 3. Wagner's counsel ended his email with the following statement: "My client will sign the agreement once that is changed." *Id.* at 4. In response to that email, Shellpoint's counsel noted that "Shellpoint is fine with the settlement payment going directly to Ms. Wagner." *Id.* at 2. Shellpoint attached an updated version of the settlement agreement for execution. *See* Dkt. 13-6. To date, Wagner has refused to sign the settlement agreement.

Shellpoint now requests an order enforcing the parties' settlement agreement and dismissing this case. Wagner did not respond to Shellpoint's Motion to Enforce Settlement Agreement.

## ANALYSIS

The Fifth Circuit has recognized that "a district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020) (cleaned up). A federal court sitting in diversity applies the law of the forum state when deciding whether to enforce a settlement agreement. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 266 (5th Cir. 1995). "More specifically, the enforceability of a settlement agreement in a diversity case tried in a federal district court in Texas is governed by

the provisions of Rule 11 [of the] Texas Rules of Civil Procedure." *Borden v. Banacom Mfg. & Mktg., Inc.*, 698 F. Supp. 121, 123 (N.D. Tex. 1988). Under Rule 11, a settlement agreement is enforceable only if it is (1) in writing; (2) signed; and (3) filed as part of the record. *See* TEX. R. CIV. P. 11. All three requirements are easily met here.

First, the "in writing" requirement is met when there is "a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (quotation omitted). An email exchange satisfies the "in writing" requirement so long as it contains the material details and essential elements of the parties' agreement. *See Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Hum. Servs.*, 540 S.W.3d 553, 561 (Tex. 2018) (finding that an email agreement satisfied Rule 11's "in writing" requirement); *Limon-Hernandez v. Target Corp.*, No. 3:19-CV-2817-N, 2021 WL 3812159, at *1 (N.D. Tex. Mar. 10, 2021) (same). In this case, lawyers for both parties provided email confirmation that the terms of the proposed settlement, as set forth in an attached settlement agreement, were acceptable. The email exchange between counsel unquestionably satisfies the "in writing" requirement.

Second, Rule 11 requires not simply a writing, but a signed writing. Some courts have held that a name or email address in the "from" field of an email satisfies the signed writing requirement. *See Limon-Hernandez*, 2021 WL 3812159, at *2 (determining that email agreements between the parties' counsel satisfied the signing requirement "[b]ecause the 'from' field functions to identify the sender of the email and authenticate the email"); *see also Khoury v. Tomlinson*, 518 S.W.3d 568, 576 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (holding that the name or email address in the "from" field satisfied the Texas Uniform Electronic Transactions Act's signature requirement). Here, the names and email addresses of the lawyers are readily apparent in the "from" field of the email exchange. *See* Dkt. 13-4. Even more persuasive is the fact that each lawyer typed his/her name under the text of each email,

3

indicating that the parties fully intended to conduct the settlement transaction by electronic means.

Third, the relevant email exchange and settlement agreement has been filed as part of the record. *See* Dkts. 13-4, 13-6.

Because the settlement agreement between Wagner and Shellpoint is in writing, signed, and filed as part of the record, I conclude under Texas state law that a valid and enforceable settlement exists.

## CONCLUSION

For the reasons set forth above, I recommend that the Motion to Enforce Settlement Agreement be **GRANTED**. The document titled Confidential Settlement Agreement and Release (Dkt. 13-6 at 2–9) contains the essential terms of the settlement, and both parties should be required to comply with those terms. Wagner's claims brought in this lawsuit should be dismissed with prejudice to refiling.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 2nd day of May 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE